UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHARLES HUDSON HEAD, III,

                Petitioner,

v.

WILLIE SMITH,

                Respondent.

_____/

Case No. 1:17-cv-1061

Honorable Paul L. Maloney

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Charles Hudson Head, III is incarcerated with the Michigan Department of Corrections at the Ionia Correctional Facility (ICF) in Ionia, Michigan. Following a jury trial in the Wayne County Circuit Court, Petitioner was convicted of third-degree criminal sexual conduct (CSC-III), Mich. Comp. Laws § 750.520d; assault with intent to do great bodily harm (AGBH), Mich. Comp. Laws § 750.84; and armed robbery, Mich. Comp. Laws § 750.529. The jury acquitted Petitioner of two counts of first-degree criminal sexual conduct (CSC-I) and one count of kidnapping. On July 3, 2014, the court sentenced Petitioner as a habitual offender-fourth offense, Mich. Comp. Laws § 769.12, to concurrent prison terms of 50 to 75 years for each offense. The concurrent sentences, however, were to be served consecutively to sentences for offenses for which Petitioner was on parole at the time he committed the present offenses.

On November 28, 2017, Petitioner timely filed his habeas corpus petition. Petitioner left blank the section of the habeas petition form that required him to identify his habeas issues.  Instead, he attached the briefs he filed in the Michigan Court of Appeals and the Michigan Supreme Court.  In the Michigan Court of Appeals, through his brief filed with the assistance of counsel and his Standard 4 brief,[1] he raised seven issues:

I.  The evidence was not legally sufficient to prove beyond a reasonable doubt that Mr. Head aided and abetted in the third-degree criminal sexual conduct committed by another individual rendering that conviction constitutionally defective and necessitating reversal under the due process guarantees of the 14th Amendment and Const. 1963, Art. 1, § 17.

II.  [Petitioner's] Fourth Amendment rights [were] violated where the [search] warrant was premised on false testimony.

III.  [Petitioner's] constitutional rights to the effective assistance of counsel [were] violated.

IV.  [Petitioner's] constitutional right to due process was violated where the evidence was insufficient to prove beyond a reasonable doubt that [Petitioner] committed armed robbery.

V.  The trial court abused its discretion by erroneously scoring offense variables 4, 7, and 10 contrary to the evidence recorded.

VI.  [Petitioner's] constitutional right to due process was violated where the evidence was insufficient to prove beyond a reasonable doubt that [Petitioner] committed assault with intent to do great bodily harm less than murder.

VII.  [Petitioner's] constitutional right to due process was violated where the eyewitness identification testimony was improperly suggestive and had no independ[e]nt basis.

---

[1] Standard 4 permits an appellant to file a brief *in propria persona* covering issues the appellant wants to raise on appeal even though his counsel does not.  Mich. Admin. Order No. 2004-6.

2

(Pet'r's Br. on Appeal, ECF No. 1-1, PageID.18 (Issue I); Pet'r's Standard 4 Br. on Appeal, ECF No. 1-1, PageID.45-46 (Issues II-VII).)  In the Michigan Supreme Court, Petitioner raised the same seven issues plus one new one.

Petitioner failed to exhaust his state court remedies with respect to the new issue he raised in the Michigan Supreme Court.  Petitioner also requested a stay to permit him to raise additional issues by way of a motion for relief from judgment in state court.  (ECF No. 3.)  As set forth fully in the Court's January 12, 2018, opinion and order (ECF Nos. 6, 7), the Court provided Petitioner 28 days to demonstrate that he was entitled to a stay.  The Court warned Petitioner that, should he fail to timely comply, the Court would review only Petitioner's exhausted claims.  Petitioner failed to timely comply; accordingly, the Court's review is limited to habeas issues I-VII. (Order, ECF No. 11.)

Respondent has filed an answer to the petition (ECF No. 15) stating that the grounds should be denied because they are procedurally defaulted, non-cognizable, and/or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are either non-cognizable or meritless.  Accordingly, I recommend that the petition be denied.

## **Discussion**

### I.    Factual allegations

At Petitioner's trial, the 28-year-old female victim testified that, on the morning of June 25, 2013, she responded to an internet chat-room inquiry seeking

marijuana.  (Trial Tr. II, ECF No. 16-9, PageID.631, 636-642.)  She drove to the address provided: 8487 Penrod in Detroit, Michigan.  (*Id.*, PageID.642-643.)  When she arrived at the home, Petitioner was standing at the front door.  (*Id.*, PageID.643, 646-648.)  She locked her car and went into the house to see the money before she brought in the marijuana.  (*Id.*, PageID.645.)

Petitioner led her upstairs into a bedroom, ostensibly to show the victim the money.  (*Id.*, PageID.648-650.)  Instead, he held her in the bedroom, compelled her to undress, and then, without consent, penetrated her mouth and her vagina with his penis.  (*Id.*, PageID.650-657.)

When Petitioner was finished, he directed the victim to get dressed and he followed her down the stairs.  (*Id.*, PageID.657-659.)  Partway down the stairway, the victim was stunned by a blow to her head.  (*Id.*, PageID.659-660.)  She looked back and saw Petitioner wielding an axe with a blue towel wrapped around the handle. (*Id.*, PageID.661-662.)  He swung again, hitting her on the left arm.  (*Id.*)

Petitioner instructed the victim to empty her pockets and, again, remove her clothing.  (*Id.*, PageID.662-664.)  Petitioner sent his roommate, who had been sleeping on a couch in the living room, out to the victim's vehicle to retrieve the marijuana and other items of value.  (*Id.*, PageID.665-666.)  Upon his return, Petitioner directed the victim to kneel on the stairs and put her mouth on one of the treads.  (*Id.*, PageID.668-669.)  He directed his roommate to get a condom from upstairs.  (*Id.*)  Petitioner then stood nearby as his roommate, without consent, penetrated the victim's vagina with his penis.  (*Id.*, PageID.670-671.)

4

Petitioner then told the victim to go an get them more drugs.  (*Id.*, PageID.672-677.)  He threatened to kill her and her loved ones if she did not return within an hour.  (*Id.*)  He gave her a t-shirt to wear, keeping her clothes.  (*Id.*)

The victim went to a nearby gas station and was able to convince a patron to call the police.  (*Id.*, PageID.677-679.)  She told police she had been carjacked, brought to the house, and was then raped, robbed, and assaulted.  (*Id.*, PageID.679-681.)  At trial, the victim explained her carjacking lie as an attempt to cover the true purpose of her visit to the home.  (*Id.*, PageID.682)

Based on the victim's story, the police obtained a search warrant.  (*Id.*, PageID.770; Trial Tr. III, ECF No. 16-10, PageID.833-835.)  Upon execution of the warrant, between Petitioner's home and a nearby dumpster, the police found the axe, the victim's clothing, the victim's wallet, and the victim's GPS system.  (Trial Tr. II, ECF No. 16-9, PageID.771-773; Trial Tr. III, ECF No. 16-10, PageID.794-796, 838.)  Petitioner and his roommate had fled.  (Trial Tr. II, ECF No. 16-9, PageID.770-771; Trial Tr. III, ECF No. 16-10, PageID.790-791.)

At the time of the offense, Petitioner was on parole and on tether.  After the victim left, Petitioner cut off the tether and absconded.  (Trial Tr. III, ECF No. 16-10, PageID.931-932.)  He was finally arrested more than six months later.  (*Id.*, PageID.904-905.)  Police never located Petitioner's roommate or any other person who may have been in the house at the time of the incident.

Petitioner did not testify at trial. Upon his arrest, however, he participated in an interview. (*Id*., PageID.906-924.) He provided written and signed responses to written questions from an officer. (*Id*.) The written questions and answers were admitted as evidence.

Petitioner's version of the events varied from the victim's in five key respects. First, he claims he had two houseguests, not one. (*Id*., PageID.917.) Second, one of the houseguests invited the victim over, not him. (*Id*.) Third, the houseguest invited her over for the purpose of having intercourse for money, but he did not have enough. (*Id*., PageID.919.) Fourth, he acknowledged that he had vaginal intercourse with the victim, but he claimed it was consensual. (*Id*., PageID.918-919.) Fifth, he claimed that it was one of the houseguests who hit the victim with the axe on the stairway, robbed her, and then, despite Petitioner's attempts to stop him, raped the victim on the stairs. (*Id*., PageID.919-923.)

Prior to trial, Petitioner's counsel moved to suppress the evidence seized pursuant to the search warrant because the warrant was signed on the strength of a probable cause affidavit that included the victim's lie about the carjacking. (Evid. Hr'g Tr., ECF No. 16-7.) The trial court denied the motion, and would not even proceed with a *Franks* hearing,[2] because there was no evidence presented suggesting that the officer was aware of the falsity of the information and, further, because even

---

[2] In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court specified the circumstances under which an evidentiary hearing must be held regarding a claim that an affidavit supporting a search warrant is invalid because it includes an intentional or reckless false statement that was necessary to a finding of probable cause.

6

if the false information were eliminated from the affidavit, there was sufficient other true information in the warrant to support a finding of probable cause and the issuance of the warrant. (*Id*.)

At trial, Petitioner's counsel suggested to the jury that the victim was still not credible with regard to her account of the events. (Trial Tr. III, ECF No. 16-10, PageID.973-983.) Counsel claimed that it simply did not make sense that the victim left the marijuana in the car. (*Id*.) Counsel's closing, in its entirety, suggested that the victim came to sell sexual services, not marijuana.

The jury deliberated for only a couple of hours before returning its split verdict.[3] (Trial Tr. IV, ECF No. 16-11.) The court sentenced Petitioner as described above.

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences to the Michigan Court of Appeals raising the seven issues listed above. The court of appeals affirmed the trial court in all respects by unpublished opinion issued January 12, 2016. (Mich. Ct. App. Op., ECF No. 16-13, PageID.1067-1076.)

---

[3] The split certainly supports the inference that Petitioner's counsel's argument gained some traction during deliberations. Guilt on the kidnapping charge, Mich. Comp. Laws § 750.349, turned on a determination that Petitioner restrained the victim with the intent to engage in criminal sexual penetration. Guilt on the CSC-I charges, Mich. Comp. Laws § 750.520b, turned on a determination that sexual penetration occurred during a kidnapping. If the jurors determined that Petitioner's penetration of the victim was consensual—for the promise of payment or otherwise— Petitioner would not be guilty of kidnapping or CSC-I. Yet, that initial consent would not foreclose a determination of guilt with respect to the counts that were based on the events that occurred on the stairs.

Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court, again raising the seven issues listed above. (Pet'r's Appl. for Leave to Appeal, ECF No. 16-14, PageID.1251-1275.) The supreme court denied leave by order entered November 30, 2016. (Mich. Order, ECF No. 16-14, PageID.1250.) Just before the first anniversary of that decision, Petitioner filed this petition.[4]

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the

---

[4] Petitioner subsequently, on March 15, 2018, filed a motion for relief from judgment in the Wayne County Circuit Court. (Mot. for Relief from J., ECF No. 16-15.) The motion raises three issues: (1) ineffective assistance of trial counsel for failing to strike a biased juror; (2) denial of a counsel at a critical stage of the proceedings; and (3) defects in the probable cause affidavit and search warrant. The trial court denied that motion by opinion and order entered May 30, 2018. (Wayne Cty. Cir. Ct. Order, ECF No. 16-16.) Petitioner has applied for leave to appeal that decision in the court of appeals. *See* https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx (search Docket Number 346666, last visited March 10, 2019).

facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Sufficiency of the Evidence (Habeas Issues I, IV, and VI)

Petitioner contends the evidence was insufficient to support a determination of his guilt on any of the charges.  A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). Petitioner has not even come close to overcoming that hurdle.

In rejecting Petitioner's claims that the evidence was insufficient, the court of appeals applied the following standard:

> In deciding whether sufficient evidence exists "to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v. Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000) (internal quotation and citation omitted).
>
>> The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. [*Id*. at 400 (internal quotation and citation omitted).]

11

> "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v. Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

(Mich. Ct. App. Op., ECF No. 16-13, PageID.1067-1068.)   Although the court of appeals relied upon *People v. Nowack*, 614 N.W.2d 78 (Mich. 2000) for the relevant standard, the *Nowack* court derived the standard from *Jackson*.   There can be no doubt, therefore, that the court of appeals applied a standard that is consistent with clearly established federal law.   Moreover, the court of appeals applied the standard reasonably for each of Petitioner's crimes.

### A.    Aiding and Abetting CSC-III

The Michigan Court of Appeals identified the elements of CSC-III, as well as the elements of aiding and abetting.   The court then reviewed the evidence presented—principally the testimony of the victim—against those elements.   That is precisely the analysis *Jackson* calls for.   *Jackson*, 443 U.S. at 324 n.16 (the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law).

The appellate court reasoned as follows:

> The prosecution alleged that defendant committed CSC III by aiding or abetting another male in engaging in a forcible act of sexual penetration. . . .   Defendant complains that the record lacked evidence of "any exhortation, aiding, encouragement, or direction from [him] to the second male to commit the criminal sexual act."   We disagree.   The victim testified that she remained on a stairway inside defendant's house because defendant had twice struck her with an ax, that she removed her clothing for the second time on the stairway of the house because defendant had threatened to hit her with the ax again, that defendant stayed with her as she sat on the stairs at defendant's

12

direction while a second man, the principal, went outside to search the victim's car, that when the second man returned from the victim's car, she complied with defendant's instructions that she turn around and "put [her] mouth on the carpet of the stairs," that defendant "told the other male to go upstairs and get a condom," that the other man got a condom, put it on, and placed his penis inside the victim's vagina, and that defendant continued standing near the victim during at least a portion of the sexual act.

The victim's testimony was sufficient to prove beyond a reasonable doubt that defendant aided or abetted the principal's act of sexual penetration. Defendant assisted, encouraged, and induced the principal's sexual act by forcing the victim to disrobe on the stairway, ordering that she place her mouth on the carpet immediately before telling the principal to obtain a condom, and remaining near the victim and the principal while he penetrated her vagina. See *Moore*, 470 Mich at 71. The same testimony was also sufficient to enable the jury to find beyond a reasonable doubt that when defendant assisted the principal, he intended for the principal to penetrate the victim's vagina, knowing that the principal intended to do so. See *Robinson*, 475 Mich. at 6.

(Mich. Ct. App. Op., ECF No. 16-13, PageID.1068-1069.)

To prevail, Petitioner must show that the factual determinations of the appellate court were unreasonable or that its legal determinations are contrary to, or an unreasonable application of, *Jackson*, the clearly established federal law regarding sufficiency. Petitioner, however, does not respond to the court of appeals' analysis at all. He only attaches his appeal briefs. Those briefs do not address the court of appeals' factual or legal determinations in any respect.

Petitioner argued in his appeal briefs that, generally, the evidence did not suffice to demonstrate that he aided and abetted CSC-III. In response, the court of appeals identified the elements of CSC-III and aiding and abetting in Michigan, and then reviewed the evidence that sufficed to demonstrate those elements. At that

13

point, Petitioner cannot simply rest on the laurels of his general statement that the evidence was insufficient and still hope to prevail.

The elements of a violation of the CSC-III statute and the elements of aiding and abetting culpability under Michigan's criminal statutes are entirely a matter of state law. It is the prerogative of the state to define the elements of the crime and that definition binds the federal courts. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").

Additionally, the court of appeals' factual determinations are presumed correct. Petitioner has not provided any evidence, much less clear and convincing evidence, to rebut that presumption. Moreover, the court of appeals' factual determinations here find ample record support in the victim's testimony. Therefore, Petitioner is not entitled to habeas relief on his claim that there was insufficient evidence to support his conviction of CSC-III.

B.    Armed Robbery

The appellate court also concluded there was sufficient evidence to support Petitioner's conviction for armed robbery:

14

The armed robbery statute proscribes possession of a weapon or other article "in the course of engaging in" a larceny from a person, and references MCL 750.530. MCL 750.530(2) defines "in the course of committing a larceny" to "include[ ] acts that occur in an attempt to commit the larceny, or during the commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property."

Defendant maintains that although the victim testified that defendant "threatened to kill the victim," she "complied with the order to empty her pockets without the existence or use of a weapon."  Defendant's argument ignores the victim's testimony that as she descended the stairway, defendant walked behind her, she felt something hard strike the back of her head, she turned around, saw defendant standing close behind her, felt him hit her left arm, and noticed that defendant had struck her with an ax that "had a blue shirt or a blue towel" around the handle.  The victim next remembered that while she and defendant remained on or near the stairs, she noticed bleeding from her head, she heard defendant, who still held the ax, tell her to empty the money in her pockets, and she removed from her pockets $10, her car keys, and a cell phone.

The victim's testimony was sufficient to permit a rational jury to find beyond a reasonable doubt that defendant possessed the ax "in the course of" committing a larceny from the victim.  The evidence also permitted the jury to find beyond a reasonable doubt that the ax that defendant wielded qualified as "an article used or fashioned in a manner to lead [the victim] to reasonably believe the article is a dangerous weapon," especially after he had used the ax to strike the victim's head and caused it to bleed profusely.  See MCL 750.529.

(Mich. Ct. App. Op., ECF No. 16-13, PageID.1070.)

Petitioner's sufficiency argument with respect to the armed robbery conviction also relies entirely on his appellate briefs.  Those briefs, in turn, rely entirely on Petitioner's claim that there was no evidence of a weapon used in a larceny.  That argument in the habeas context plainly disregards Petitioner's burden to demonstrate a flaw in the court of appeals' factual or legal determinations.

The court of appeals identified the elements of armed robbery and then examined the evidence that Petitioner wielded an axe as he demanded that the victim empty her pockets. Petitioner's attempts to compartmentalize the events to separate the use of the axe from the acts depriving the victim of her property are absurd. He has failed to show that the court of appeals' factual determinations are unreasonable on the record or that the court of appeals' legal determinations are contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on his armed robbery sufficiency claim.

### C.    AGBH

With respect to his assault with intent to do great bodily harm conviction, Petitioner contends there was insufficient evidence of an intent to do great bodily harm. The crux of Petitioner's argument is that if, indeed, he had intended to do great bodily harm, "the injury would have been worse." (Pet'r's Appl. for Leave to Appeal, ECF No. 16-14, PageID.1267.) The court of appeals disagreed:

> The crime of assault with intent to do great bodily harm, MCL 750.84(1)(a), requires the prosecutor to prove that the defendant committed "an assault, i.e., an attempt or offer with force and violence to do corporal hurt to another coupled with (2) a specific intent to do great bodily harm less than murder." *People v. Bailey*, 451 Mich 657, 668-669; 549 NW2d 325 (1996), amended 453 Mich 1204 (1996). The victim testified that as she walked down the stairway, defendant followed behind her, she felt a hard object strike her head and knock her off balance, and defendant then struck her arm. The victim saw that defendant had struck her with an ax. The head wound bled profusely and necessitated staples to close it. The prosecutor also introduced photographs of the victim's injuries and a nurse's testimony about the injuries. See *People v. Dillard*, 303 Mich App 372, 378; 845 NW2d 518 (2013) (the extent of an injury is probative of the intent to cause the requisite quantum of harm). The evidence that defendant used an ax to

16

strike the victim's head was sufficient to allow the jury to find beyond a reasonable doubt that defendant intended to cause great bodily harm.

Although defendant has submitted an affidavit denying that he intended to cause great bodily harm, the affidavit was not presented in the trial court, and therefore, is not properly before this Court. *People v. Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013). Regardless, the affidavit would not compel a different result. Notwithstanding defendant's professed intent, the victim's testimony and other evidence of her injuries was sufficient to prove beyond a reasonable doubt that defendant acted with the specific intent to cause great bodily harm.

(Mich. Ct. App. Op., ECF No. 16-13, PageID.1070-1071.)

Petitioner's brief in the Michigan Supreme Court responds to the court of appeals' analysis in two respects. First, he invites the court to disregard the victim's testimony. (Pet'r's Appl. for Leave to Appeal, ECF No. 16-14, PageID.1267 ("The intent on my part was not to harm or injure the victim, the weapon that was used had no evidence that it was used on her besides [her] testimony.").) Second, he asks the court to draw a different inference from the nature of the victim's injury than the one identified by the court of appeals. (*Id.* ("She was never unconscious at any moment [and] if she was hit by this large ax, . . . the injury would have been worse.").) In making that request, Petitioner implicitly urges the court to view the evidence in a light that favors him. Petitioner's argument turns the *Jackson* standard on its head.

The *Jackson* standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is

required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

To accept Petitioner's first invitation is not permissible because simply rejecting the victim's testimony is to take from the jury its role of resolving conflicts in testimony and determining credibility. Moreover, it requires viewing the evidence in a light that favors Petitioner, not the prosecution.

That is also a flaw in Petitioner's request that the court infer no intent to cause great bodily harm because the injury actually caused was not as bad as it could have been. *Jackson* holds that it is the jury's province to draw reasonable inferences from basic facts to ultimate facts. *Id*, 443 U.S. at 319. In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The Court described a reasonable inference as an inference that a rational jury could make from the facts. Certainly, the inference identified by the court of appeals—that the severity of the victim's injuries supported an inference that Petitioner intended to cause great bodily harm—rationally flows from the underlying facts. The inference is not compelled by those facts. The inference may not even be more likely than not. It is simply rational. *Id*. at 656. To succeed in his challenge, Petitioner must show that the identified inference is irrational. He has not made, and cannot make, that showing. His

showing that other inferences might follow from the nature of the victim's injuries—inferences that favor him—is immaterial.

Petitioner has failed to show that the Michigan Court of Appeals' factual determinations are unreasonable.  He has also failed to demonstrate that the court of appeals' legal determinations are contrary to, or an unreasonable application of, *Jackson*.  Accordingly, he is not entitled to habeas relief on his sufficiency claim regarding his assault conviction.

IV.    Unconstitutional Search (Habeas Issue II)

Petitioner claims that the search of his residence was illegal and that the evidence seized should have been suppressed because the affidavit of probable cause included an admittedly false statement.  Petitioner's illegal search claim is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims).  In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the claim.  *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

For the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism.  *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985).

If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error.  *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

Petitioner cannot satisfy either prong of the *Stone v. Powell* standard.  First, it is beyond dispute that Michigan has a state procedural mechanism that provides a defendant a full opportunity to raise a Fourth Amendment claim before trial.  Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures.  *See People v. Margelis*, 186 N.W. 488 (Mich. 1922).  After *Mapp v. Ohio*, 367 U.S. 643 (1961), Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment.  *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982).  Consequently, Michigan affords criminal defendants a means to raise Fourth Amendment challenges.

To satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down.  *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim).  The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to

have been in "egregious error."  *Gilbert*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts indicating that the state's mechanism has broken down.  Indeed, it is clear that the Michigan courts gave Petitioner's claim full and proper consideration.  Petitioner's trial counsel moved to suppress the evidence in the trial court.  (Mot. Hr'g Tr., ECF 16-7.)  His motion was denied.  (Evid. Hr'g Tr., ECF No. 16-7, PageID.399.)  The court of appeals addressed Petitioner's Fourth Amendment claims regarding the pre-warrant conduct of the law enforcement personnel and concluded the claims had no merit.  (Mich. Ct. App. Op., ECF No. 16-13, PageID.1071-1072.)  The Michigan Supreme Court then determined that Petitioner's Fourth Amendment issues were not worthy of further review.  (Mich. Order, ECF No. 16-14, PageID.1250.)

Even if this Court were to disagree with the determinations of the Michigan courts, that disagreement would be insufficient to demonstrate a break-down in the state court's corrective mechanisms.  *Gilbert*, 763 F.2d at 824.  Accordingly, because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claims of illegal search and seizure are barred on habeas review.

V.    Errors in Scoring the Sentencing Guidelines (Habeas Issue V)

Petitioner complains about the trial court's scoring of three offense variables (OVs).  OV4 asks the court to determine whether serious psychological injury that might require professional treatment occurred to a victim.  Mich. Comp. Laws § 777.34.  Petitioner contends that there was no evidence of such injury in the record

21

and that the court simply assumed that someone in the victim's position would have suffered psychological harm.  (Pet'r's Std. 4 Br., ECF No. 16-13, PageID.1136-1137.)

OV7 asks the court to determine whether a victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.  Mich. Comp. Laws § 777.37.  Petitioner acknowledges that his conduct was reprehensible and that his actions were "absolutely designed to cause fear[,]" but he denies that it was "designed to substantially increase the fear and anxiety" of the victim.  (Pet'r's Std. 4 Br., ECF No. 16-13, PageID.1137.)

OV10 asks the court to evaluate whether the offender exploited a vulnerable victim.  Mich. Comp. Laws § 777.40.  Petitioner complains that the evidence did not support a score of 10 points, but the court did not score 10 points on this variable. (Sentencing Tr., ECF No. 16-12, PageID.1048-1049.)  The court scored 5 points, (*Id.*), which is appropriate where "[t]he offender exploited a victim by his or her difference in size or strength, or both . . . ."  Mich. Comp. Laws § 777.40(1)(c).  The court stated: "Well clearly we had two persons against one in this case, there were two men present.  We had a woman who was physically – there was a physical difference in terms of size, just by seeing both of the persons in court."  (Sentencing Tr., ECF No. 16-12, PageID.1048.)

The Michigan Court of Appeals concluded that the trial court had scored each of the three variables appropriately.    (Mich. Ct. App. Op., ECF No. 16-13, PageID.1074-1075.)

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley*, 465 U.S. at 50); *see also Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004) (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless

the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted).  A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).

Although Petitioner invokes *Townsend* when presenting his argument, (Pet'r's Standard 4 Br., ECF No. 16-13, PageID.1139), he does not identify any false information upon which the court relied in scoring the guidelines.  Indeed, Petitioner's arguments are based on applying the guidelines improperly, not applying the guidelines to false information.  Petitioner's guidelines scoring challenges are garden-variety state-law claims.  He has failed to demonstrate that the Michigan Court of Appeals determinations regarding guidelines scoring are factually unreasonable on this record or legally contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on this claim.

24

VI.    <u>Suggestive Identification (Habeas Issue VII)</u>

Petitioner contends the victim's identification of him violated due process because it occurred under suggestive circumstances.[5]  Due process provides a "check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime."  *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012). The principle of due process "prohibits the use of identifications which under the totality of the circumstances are impermissibly suggestive and present an unacceptable risk of irreparable misidentification."  *United States v. Peterson*, 411 F. App'x 857, 864 (6th Cir. 2011) (citing *Carter v. Bell*, 218 F.3d 581 (6th Cir. 2000)).

In determining whether an unacceptable risk of misidentification exists, courts employ a two-step analysis.  *Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007) (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967), and citing *Neil v. Biggers*, 409 U.S. 188, 197 (1972)).  The first step requires a determination as to whether the identification was "unnecessarily suggestive."  *Id.*  The second step of the inquiry requires consideration of a number of factors, including

> The factors considered in making this determination include:  "1) the witness's opportunity to view the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation."

---

[5] The court of appeals noted that Petitioner's identification challenges were deprived of substance by his defense.  (Mich. Ct. App. Op., ECF No. 16-13, PageID.1076.) Petitioner provided a statement to police indicating that he had consensual sex with the victim that morning.  Thus, the court of appeals reasoned, "[i]dentification was not an issue at trial."  (*Id.*)

*United States v. McComb*, 249 F. App'x 429, 437 (6th Cir. 2007) (citing *United States v. Beverly*, 369 F.3d 516 (6th Cir. 2004)); *see also Haliym*, 492 F.3d at 704 (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977), and *Biggers*, 409 U.S. at 199-200). If "the first step of the requisite analysis ends in the government's favor, [the court] need not address" the second step of the inquiry. *United States v. Stamper*, 91 F. App'x 445, 462 (6th Cir. 2004).

Though the Michigan Court of Appeals relied on state authorities, it described a standard for resolving a suggestive identification claim that is functionally identical to the federal standard. (Mich. Ct. App. Op., ECF No. 16-13, PageID.1075.)  The victim identified Petitioner three times:  first, the day of the incident in a photo array; second, at the preliminary examination; and third, at trial.  The court of appeals reviewed the relevant factors and concluded that the likelihood of misidentification was not substantial.  (*Id.*, PageID.1075-1076.)  Moreover, the court pointed out, Petitioner provided no factual support for any challenge to the photographic lineup. (*Id.*, PageID.1076.)  Finally, the appellate court rejected Petitioner's argument that differences in his appearance at the time of his arrest in January of 2014 compared to the time of the assaults in June of 2013 rendered the victim's identification of him at the preliminary examination and trial inadmissible.  (*Id.*)  The court determined that any such differences might impact the weight afforded the identification testimony, but not its admissibility.  (*Id.*)

The court of appeals' determination that Petitioner had provided no factual support for his claim that the photographic lineup was suggestive is not unreasonable on the record nor is it contrary to any clearly established federal law. Thus, Petitioner's identification challenge regarding the photographic lineup never gets past the first step.

There can be little question that the victim's identifications of Petitioner at the preliminary examination, and then the trial, were the product of suggestive circumstances. The Supreme Court has expressly stated that such identifications are "suggestive." *See Perry*, 565 U.S. at 244 ("Most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do."). But the fact that an identification procedure is suggestive does not, standing alone, implicate due process protections. Rather, there must be "improper law enforcement activity" before a suggestive identification requires further scrutiny. *Id*. at 232-33. Because the *Perry* Court used in-court identifications as examples of suggestive identifications that do not implicate due process protections and Petitioner offers no evidence of "improper law enforcement activity" in connection with the identifications at the preliminary examination and trial here, Petitioner cannot show that the rejection of his claims relating to the identification at the preliminary examination and trial is contrary to or an unreasonable application of clearly established federal law.

27

VII.    Ineffective Assistance of Counsel (Habeas Issue III)

Petitioner makes a scatter-shot claim of ineffective assistance of counsel.  He claims that counsel failed to familiarize himself with "discovery materials," failed to present an effective defense, failed to file motions to suppress evidence or post-arrest statements, failed to obtain an identification expert, failed to respond to Petitioner's requests for action, failed to call witnesses at trial, failed to present exculpatory evidence, failed to subject the prosecution to meaningful adversarial challenge, failed to challenge the admission of the axe, and failed to challenge the credentials of the DNA expert offered by the prosecution.  (Pet'r's Std. 4 Br., ECF No. 16-13, PageID.1169-1171.)

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:   (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must

28

determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington*, 562 U.S. at 105; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals applied the *Strickland* standard to resolve Petitioner's claims.  The court rejected each of Petitioner's ineffective assistance claims:

> Defendant has not established that trial counsel was ineffective.  The record shows that defense counsel gave defendant the discovery materials and preliminary examination transcripts, visited defendant in jail in February 2014, March 2014, April 2014, and May 2014, filed a motion and obtained an order that the police administer defendant a polygraph examination, filed a motion to preclude reference to

defendant's prior criminal record, and conveyed to defendant the prosecutor's plea offer.  Defense counsel also filed a motion to quash the warrant to search 8487 Penrod.  Defendant offered no specific criticism of counsel at the pretrial hearing or elsewhere on the record.

Defendant also fails to identify any specific motion that he believes trial counsel should have filed, or any specific discovery materials he believes counsel failed to review, and he fails to explain how he was prejudiced by counsel's trial defense.  *See Strickland*, 466 US at 687-689; *Solmonson*, 261 Mich App at 663-664.  The record reveals that counsel meaningfully challenged the prosecutor's evidence, including by effectively cross-examining the prosecutor's witnesses, moving for directed verdicts, and arguing in closing that the jury should acquit defendant of the charges.  We note that the jury acquitted defendant of the three most serious charges he faced.

Concerning defendant's suggestion that defense counsel should have objected to the admissibility of the ax, defendant fails to explain on what basis counsel could have objected to the ax, and identifies no prejudice to his defense.  *See Strickland*, 466 US at 687-689; *Solmonson*, 261 Mich App at 663-664.  Regarding defendant's complaint that defense counsel erred in stipulating to the expertise of a forensic witness in the areas of identifying biological materials and DNA profiles, the record indicates that the witness possessed ample experience, expertise, and training in these areas of forensic science.  Defendant identifies no basis for an objection by defense counsel, and no prejudice that he endured arising from the expert's testimony, which established that no matches existed between the victim's rape kit samples and defendant's known DNA profile.  *See Strickland*, 466 US at 687-689; *Solmonson*, 261 Mich App at 663-664.

(Mich. Ct. App. Op., ECF No. 16-13, PageID.1073-1074.)

Petitioner has not responded to the appellate court's resolution of his ineffective assistance claims.  He has not offered evidence from the record that might demonstrate that the court of appeals' factual determinations are unreasonable, nor has he demonstrated that the court of appeals' legal determinations are contrary to, or an unreasonable application of, *Strickland*.  Petitioner simply refers the Court to

his appeal briefs which, in this instance on the court of appeals level, are little more than a listing of counsel's alleged "failures."

In the Michigan Supreme Court, Petitioner expanded his listing of counsel's failures. (Appl. for Leave to Appeal, ECF No. 16-14, PageID. 1258-1261.) His argument appears to be borrowed from the brief of someone else in that it refers to his male counsel repeatedly using a feminine pronoun. Among the instances of ineffectiveness listed in this pleading are counsel's failure to pursue certain investigations, counsel's failure to identify the factual predicate of each of the five charged counts of criminal sexual conduct, counsel's failure to consult with key witnesses, counsel's failure to sufficiently develop the defense presented at trial, counsel's failure to impeach the victim, counsel's failure to obtain and offer expert testimony, counsel's failure to discover the officer's notes, counsel's failure to obtain the witnesses' criminal histories, counsel's failure to obtain medical records, and, finally, counsel's failure to suppress the axe. (*Id.*)

Petitioner does not identify what the investigations would have shown, what consultation with the key witnesses would have revealed, how sufficient development of his defense would have changed the result, what experts would have testified to, what the officer's notes would have indicated, what the witnesses' criminal histories would have said, or how the medical records might have helped his case. To show prejudice in these circumstances, it is not enough for Petitioner to "simply state" that some unidentified piece of evidence or the testimony of an uncalled witness "would have been favorable; self-serving speculation will not sustain an ineffective assistance

claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991); *see Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("Speculation cannot suffice to establish the requisite prejudice."); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must . . . set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *see also Valenzuela v. United States*, 217 F. App'x 486, 491 (6th Cir. 2007) ("In the absence of any evidence raising a factual dispute, the district court did not abuse its discretion by refusing to hold an evidentiary hearing.").  The Court is not required to engage in "unguided speculation into the value of omitted testimony by hypothetical witnesses." *United States v. Holt*, No. 95-5173, 85 F.3d 629, 1996 WL 262466, at *9 (6th Cir. May 15, 1996).  But unguided speculation is all that Petitioner offers here.

Petitioner has utterly failed to demonstrate that his counsel's conduct was professionally unreasonable.  He has similarly failed to show that any of the alleged "failures" affected the verdict in his case.  The Michigan Supreme Court's rejection of his claim, like that of the court of appeals, is consistent with *Strickland*.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

33

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.

Dated:  __May 13, 2019__                       /s/ Phillip J. Green
                                        PHILLIP J. GREEN
                                        United States Magistrate Judge

## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).